IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| Ted D. Ellis and Teresa Ellis, | ) | C/A No.:  9:19-cv-2163-RMG-MGB |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| Cody C. Kirkman, Individually; | ) | |
| Amber Swinehammer, | ) | |
| Individually; Lindsey Gibson, | ) | |
| Individually; Cody C. Kirkman, | ) | |
| Amber Swinehammer, and | ) | |
| Lindsey Gibson, as Agents/ | ) | |
| Officers of Town of Bluffton | ) | |
| Police Department; and Town of | ) | |
| Bluffton Police Department, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

To: Arie D. Bax, attorney for Plaintiff;

_____

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' JOINT MOTION TO STAY**

_____

The Defendant Cody C. Kirkman, with the joinder of remaining Defendants, by and through the undersigned Counsel, sets forth the following as their Memorandum in Support of their Joint Motion to Stay all activity in the instant matter for a period of no less than 90 days.

Defendants so move in light of an on-going and parallel criminal investigation into the events which form the basis of the causes of action put forth by Plaintiffs in their Complaint.  As demonstrated in the record before this Court and herein, the Federal Bureau of Investigations is conducting the parallel criminal investigation.

1

Officers Kirkman, Swinehamer and Gibson respectfully submits that the on-going criminal investigation by federal authorities profoundly limits their ability to properly participate in the litigation of the instant matter. Specifically, Defendants submit that they cannot participate in the litigation of the instant case and simultaneously safeguard the right against self-incrimination secured to them by the Fifth Amendment of the United States Constitution.

## I.     APPLICABLE RULE

FRCP 26(b) is entitled "Discovery Scope and Limits."   FRCP 26(b)(1), which is entitled "Scope in General," provides as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: *Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense*–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  All discovery is subject to the limitations imposed by [FRCP] 26(b)(2)(c). [Emphasis supplied].

As stated above and as demonstrated below, Officer Kirkman submits that, in light of the on-going and parallel criminal investigation by federal authorities into the events which form the basis of the Plaintiffs' Complaint, his participation in the activities identified within the Fourth Amended Scheduling Order issued by this Court on August 7, 2020 will force him to confront the troubling prospect of either waiving his Constitutionally guaranteed Fifth Amendment privilege against self-incrimination or repeatedly invoking this privilege to the severe detriment of his interests in the instant litigation.  The remaining Defendants join in these concerns.

## II.  RELEVANT CHRONOLOGY AND FACTS

### A.  INITIAL PHASE OF LITIGATION

Plaintiffs Ted and Teresa Ellis initiated this action with the filing of a Summons and Complaint in the United States District Court of South Carolina, Charleston Division, dated August 2, 2019 by Attorney Arie D. Bax of the Beaufort Bar.[1]  In that Complaint, Plaintiffs bring various claims against Officer Cody C. Kirkman, Officer Amber Swinehamer, and Officer Lindsey Gibson, both individually and as agents/officers of Town of Bluffton Police Department and Town of Bluffton Police Department, following a traffic stop which resulted in Plaintiff Ted Ellis's arrest on or about August 3, 2017.[2]

Plaintiffs allege 42 U.S.C.A. §1983 violations of Ted Ellis's constitutional right to be free from unreasonable seizure of his person and loss of marital consortium on behalf of Plaintiff Teresa Ellis, and negligence/gross negligence as to Defendants Kirkman, Swinehamer, and Gibson for use of excessive force during the arrest.[3]  As to Defendant Town of Bluffton Police Department, Plaintiffs allege negligence/gross negligence, *respondeat superior* and negligent training/supervision of Defendants Kirkman, Swinehamer, and Gibson, loss of consortium, assault, and intentional infliction of emotional distress/outrage.

The undersigned counsel filed an Answer on behalf of the then-served Defendants on September 9, 2019, Defendants Kirkman, Swinehamer, Town of Bluffton and its Police Department.[4]  Service defenses were preserved for named

---

[1] ECF No. 1.
[2] *Id.*
[3] *Id.*
[4] ECF No. 9.

Defendant Lindsey Gibson, now residing out of state.  Thereafter, Counsel filed an Amended Answer on November 8, 2019 on behalf of Defendants and the then-served Lindsey Gibson.[5]

This Court entered its initial Conference and Scheduling Order on September 10, 2019,[6] but has amended the Scheduling Order, resulting in the current Fourth Amended Scheduling Order on August 7, 2020.[7]  Concerning discovery, this Court declared the following in its order:

> Discovery shall be completed no later than **October 6, 2020**. All discovery requests, including subpoenas *duces tecum*, shall be served in time for the responses thereto be served by this date. *De bene esse* depositions must be completed by discovery deadline. No extension of this deadline will be permitted without leave of court. No motions relating to discovery shall be filed until counsel have consulted and attempted to resolve the matter as required by Local Rule 7.02 (D.S.C).[8]

### B.  FACTS RELEVANT TO INSTANT MOTION

In light of current events surrounding the issues of racial tensions and law enforcement, the events of August 3, 2017, described in the key allegation of Plaintiffs' Complaint, have generated and continue to generate reporting by local media outlets.  As a result of requests for investigation by federal authorities, a parallel criminal investigation commenced in June 2020.  The Affidavit of Christy Scott, attorney of record for named Defendants Cody Kirkman, Amber Swinehamer, Lindsey Gibson, and the Town of Bluffton Police Department is before the Court with Exhibits including true and accurate letters and records in the referenced case relevant to the pending Motion to Stay.[9]

---

[5] ECF No. 11.
[6] ECF No. 7.
[7] *See* ECF No. 10, 13, 18, and 24.
[8] ECF No. 24, p. 1, ¶ 3 (emphasis supplied by the Court).
[9] EFC no. 3201 through 32-8.

In early June, largely based upon the current national events, the Federal Bureau of Investigations received a request to investigate the facts underlying this action to consider federal criminal charges against the individually named officers. Attached to Scott's Affidavit as **Exhibit A** is a copy of the letter of FBI Supervisory Special Agent John Warrington advising that the Federal Bureau of Investigation has initiated a Civil Rights, Color of Law inquiry into allegations of unlawful force by Officer Kirkman upon Ted Ellis.[10]

Civil defense counsel Scott worked with the officers to obtain criminal defense counsel and the FBI investigation commenced. Defendant Cody Kirkman is represented by Charleston attorney Lionel Lofton. Defendant Lindsey Gibson is represented by Beaufort attorney Mike Macloskie. Since their retention of personal criminal counsel, Counsel has worked with these attorneys to protect the rights of the officers involved and have consulted with them on all discovery matters.[11]

During consultation with Criminal Defense Counsel Lofton on September 2, 2020, it was discovered that the federal investigation was continuing with consideration of federal criminal charges against Officer Kirkman and potentially Defendants Swinehamer and Gibson. When the FBI first sought to interview these responding officers, legal counsel spoke with the federal attorneys who declined at that time to exclude officers Swinehamer and Gibson from being potential subjects of the investigation. That stance remains.[12]

It became apparent that a Motion for Stay to protect the rights of the officers was in order. The ongoing parallel criminal investigation by federal authorities severely limits

---

[10] EFC no. 3201 through 32-8, Affidavit of Scott, Paragraph 3.
[11] EFC no. 3201 through 32-8, Affidavit of Scott, Paragraph 4.
[12] EFC no. 3201 through 32-8, Affidavit of Scott, Paragraph 9.

the officers' ability to properly participate in the litigation of the civil matter. This Motion to Stay is needed to safeguard the officers' rights against self-incrimination secured by the Fifth Amendment of the United States Constitution and to allow them to comply with the advice of their criminal counsel.[13]

Attached to Attorney Scott's Affidavit as **Exhibit D** is the September 3, 2020 letter of Mr. Kirkman's Legal Counsel, Lionel Lofton, which details his conversations with Assistant US Attorney Garner indicating that they did not expect a prosecutorial decision until late 2020 or early 2021 and that the FBI investigation was ongoing. Attached as **Exhibit E** is a second letter of Mr. Lofton of September 29, 2020, which confirms that under his advice, Defendant Kirkman will stand on his report and will not provide additional statements or sit for deposition in any matter related to the Ellis incident under investigation. These letters demonstrate the limitations on the officers' ability to properly participate in the litigation of the civil matter and the need for a stay.[14]

### C. POTENTIAL FEDERAL INDICTMENT

Given the absence of any conclusive information from federal law enforcement authorities regarding the status of their parallel criminal investigation, logic dictates that federal authorities are considering the entire spectrum of potential criminal offenses under which an indictment or indictments could be returned against Officer Kirkman by a federal grand jury. Further, federal authorities have advised that they cannot exclude officers Gibson or Swinehamer from being the subject of potential criminal charges.

---

[13] EFC no. 3201 through 32-8, Affidavit of Scott, Paragraph 10.
[14] EFC no. 3201 through 32-8, Affidavit of Scott, Paragraph 11.

III. **ARGUMENT SUPPORTING STAY OF ALL ACTIVITY IN INSTANT MATTER**

A. **FIFTH AMENDMENT PRIVILEGE IN CIVIL PROCEEDINGS**

When the instant litigation first arose, Officer Kirkman had been cleared after an internal investigation by the Bluffton Police Department of any wrongful use of force. The internal investigation into the August 3, 2017 incident alleged in the Complaint commenced on August 27, 2017. The Use of Force investigation was conducted by Lieutenant Joseph George and the report was entered by Lieutenant Joseph Babkiewicz on October 25, 2017 and noted that the officers involved in the incident were Officers Amber Swinehamer, Lindsey Gibson, and Cody Kirkman. The synopsis of the events that transpired during the incident is in line with the incident report, arrest warrants, and the statements given by the officers involved. The report concluded that Officer Kirkman used a reasonable amount of force necessary to ensure compliance from an individual who was being placed into custody.

Officer Kirkman's potential criminal exposure is a new development in this case, thus the application of Officer Kirkman's Fifth Amendment right against self-incrimination were not necessarily contemplated until now.

i. **Federal Courts**

As recognized by the United States Supreme Court in *Maness v. Meyers*, the Fifth Amendment privilege against self-incrimination "has ancient roots."[15] The Supreme Court further recognized as follows in *Maness*:

> This Court has always broadly construed its protection to assure that *an individual is not compelled to produce evidence which later may be used against him as an accused in a criminal action.* . . . The protection does not merely encompass evidence which may lead to

---

[15] *Maness v. Meyers*, 419 U.S. 449, 461 (1975).

criminal conviction, *but includes information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution.* [*Hoffman v. United States*, 341 U.S. 479, 486 (1951).][16]

The *Maness* Court further elaborated by stating the following:

In *Kastigar*, we recently reaffirmed the principle that *the privilege against self-incrimination can be asserted 'in any proceeding, civil* or criminal, administrative or judicial, investigatory or adjudicatory.'[17]

The *Maness* Court, further acknowledged that the Fifth Amendment privilege against self-incrimination "is not a self-executing mechanism; *it can be affirmatively waived, or lost by not asserting it in a timely fashion.*"[18]

In *United States v. Sharp*, the Fourth Circuit wholly adopted *Maness* and *Hoffman*:

The fifth amendment's protection against self-incrimination applies in any type of proceeding whether civil, criminal, administrative, investigatory, or adjudicatory. [*Maness,* 419 U.S. at 464]. And it applies not only to evidence which may directly support a criminal conviction, but to "information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution." [*Id.* at 461 (citing *Hoffman*, 341 U.S. at 486)].[19]

### ii. South Carolina Courts

Out of an abundance of caution, though at the time of filing this Motion there is no pending state law enforcement investigation into the events occurring on or about August 3, 2017, a review of state law concerning Officer Kirkman's privilege against self-

---

[16] *Maness*, 419 U.S. at 461 (citations omitted) (emphasis added).
[17] *Id.*, at 464, referring to *Kastigar v. United States*, 406 U.S. 442, 444 (1972) (citations omitted) (emphasis supplied).
[18] *Maness*, 419 U.S. at 466 (emphasis supplied).
[19] *United States v. Sharp*, 920 F.2d 1167, 1170 (4th Cir. 1990).

incrimination would be prudent.  Fortunately, such a review may be done succinctly, as the South Carolina Supreme Court, like the Fourth Circuit in *Sharp*, adopted *Maness* and *Hoffman*.

In *Grossheusch v. Cramer*, the South Carolina Supreme Court recognized the following:

> Both the Fifth Amendment to the United States Constitution and Article I, Section 12 of the South Carolina Constitution declare that no person shall be compelled to be a witness against himself in any criminal case. In interpreting the Fifth Amendment, the privilege against self-incrimination has been explained in practical terms as an assurance that an individual will not be compelled to produce evidence or information which may be used against him in a later criminal proceeding. [*Maness,* 419 U.S. at 461]. *The settled law provides that the privilege extends not only to answers that would themselves support a criminal conviction, but also to answers furnishing a link in the chain of evidence needed to prosecute an individual.* [*Hoffman,* 341 U.S. at 486].[20]

> That a party has invoked the privilege against self-incrimination, however, does not end the matter.  *Instead, it is well-settled that an invocation of the privilege is confined to instances where a person has reasonable cause to apprehend danger from his answer. Id.*[21]

The *Grossheuch* Court, also adopted *Sharp* in its analysis:

> The Fourth Circuit has instructed that a court judging the invocation of the privilege against self-incrimination asks first whether the information is incriminating in nature, and second, whether there is a sufficient possibility of criminal prosecution to trigger the privilege. [*Sharp,* 920 F.2d at 1170 – 71]. In determining whether the information is incriminating, the *Sharp* court recognized that at least two categories of potentially incriminating questions exist. First, there are questions whose incriminating nature is evident on the question's face in light of the question asked and the surrounding circumstances. *Id.* at 1170. Second, there are questions which

---

[20] *Grossheusch v. Cramer*, 659 S.E.2d 112, 117 (S.C. 2008) (emphasis added).
[21] *Id.* (emphasis added).

though not overtly incriminating, can be shown to be incriminating through further contextual proof. *Id.*[22]

Ultimately, the *Grosshuesch* Court, 659 S.E.2d at 119, recognized the following:

> . . . courts have nonetheless instructed that the question of application of the privilege is one for the court, and that *the guiding principle in a self-incrimination inquiry is the objective reasonableness of a witness's claimed fear of future prosecution*. *Sharp,* 920 F.2d at 1171.[23]

## B. APPLICABLE LEGAL STANDARD FOR IMPOSING A STAY UPON CIVIL PROCEEDINGS WHEN CONFRONTED WITH A PARALLEL CRIMINAL INVESTIGATION

### i. Analysis of Standard Previously Applied in this District

Courts within this District have previously considered motions for stay on grounds similar to the grounds invoked by Officer Kirkman and the remaining Defendants in this instant motion.

By way of illustration, in *Harbor Town Yacht Club Boat Slip Owner Ass'n v. Safe Berth Management, Inc.*, Judge Duffy explained the circumstances under which the defendants sought a stay in that case.[24] In *Harbor Town Yacht*, federal authorities had begun a criminal investigation into the dredging activities of Safe Harbor and SIDA and subsequently witnesses were subpoenaed to testify at a federal grand jury hearing and it was likely that a federal indictment was forthcoming. Under these circumstances, Judge Duffy explained:

> **Defendants now move that this civil litigation be stayed until the federal criminal investigation is complete**. Defendants allege that such a stay is necessary to prevent duplicative efforts by the court

---

[22] *Grosshuesch*, 659 S.E.2d at 117-18.
[23] *Grosshuesch*, 659 S.E.2d at 119 (emphasis supplied).
[24] *Harbor Town Yacht Club Boat Slip Owner Ass'n v. Safe Berth Management, Inc.*, 411 F. Supp.2d 641, 643 (D.S.C. 2005).

**and to prevent Defendants' officers from being compelled to assert their Fifth Amendment privilege against self-incrimination, thus thwarting Defendants' ability to testify as to relevant facts in the civil case**. A stay would also prevent the exposure of Defendants' criminal defense in advance of the criminal trial and would not unduly prejudice Plaintiff's case.[25]

Judge Duffy began his analysis of the defendants' motion to stay by pointing to the fact that the court has authority to stay civil proceedings pending the resolution of criminal investigations.[26]   Moreover, he emphasizes that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants."[27] Because of the frequency with which civil and regulatory laws overlap criminal laws, American jurisprudence contemplates the possibility of simultaneous or virtually simultaneous parallel proceedings and the Constitution does not mandate the stay of civil proceedings in the face of parallel criminal proceedings.[28] "Nevertheless, a court may decide in its discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions 'when the interests of justice seem to require such action, sometimes at the request of the prosecution, [. . .] sometimes at the request of the defense[.]'"[29]

---

[25] *Id.* [emphasis added].

[26] *Id.*, 411 F.Supp.2d at 643-44 (citing *St. Paul Fire and Marine Ins. v. United States,* 24 Cl.Ct. 513 (1991); *Campbell v. Eastland,* 307 F.2d 478 (5th Cir. 1962)).

[27] *Landis v. North American Co.,* 299 U.S. 248, 254 (1936).

[28] *SEC v. Dresser,* 628 F.2d 1368, 1374 – 75 (D.C.Cir. 1980); *see also Keating v. OTS,* 45 F.3d 322, 324 (9th Cir. 1995) ("[t]he Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings.").

[29] *Dresser,* 628 F.2d at 1375 (quoting [*Kordel,* 397 U.S. at 12, n. 27]; *United States v. Any and All Assets of That Certain Business Known as Shane Co.,* 147 F.R.D. 99, 101 (M.D.N.C. 1992)) ("[t]he public has an interest in law enforcement which may, under proper circumstances, be given priority over concurrent civil proceedings."); *cf. United*

Under the *Harbor Town Yacht Club* analysis, to support a stay of a civil case during a criminal investigation, the moving party must show that the two proceedings are related and substantially similar so that the same evidentiary material likely will be involved and that the government's case may be compromised.[30] In determining whether to stay civil proceedings, the Court must also balance any substantial harm to the civil claimant and his interest in obtaining a prompt and fair resolution of the civil action concerning property in which he may have an interest against the moving party's interest in preserving the integrity of his criminal investigation and the narrow scope of criminal discovery.[31] The appropriateness of a stay is determined on a case-by-case analysis.[32]

However, in that matter, after evaluating their motion in light of the circumstances confronted by the parties as well as the above-stated precedent, Judge Duffy ultimately decided against imposing the stay sought by the defendants in *Harbor Town Yacht Club*.[33]

### ii. Analysis of Standard from *Ashworth*

In *Harbor Town Yacht Club*, Judge Duffy followed the standard established by the court in *Ashworth v. Albers Medical, Inc.*[34] The *Ashworth* Court, articulated the following standard, and, in doing so, relied upon *Keating*, another case cited by Judge Duffy:

> In *Keating,* the Ninth Circuit stated that the following factors should be considered in the exercise of that discretion:

---

*States v. Georgia Pacific Corp.,* 562 F.2d 294, 296 (4th Cir. 1977) (noting that a motion to stay proceedings is committed to the sound discretion of the court); *Ashworth v. Albers Medical, Inc.,* 229 F.R.D. 527, 530 (S.D.W.Va.2005).

[30] *Shane Co.,* 147 F.R.D. at 101.

[31] *Id.*

[32] *Afro-Lecon, Inc. v. United States,* 820 F.2d 1198, 1202 (Fed.Cir. 1987); *Dresser,* 628 F.2d at 1375; *Ashworth,* 229 F.R.D. at 530-31.

[33] *Harbor Town Yacht Club*, 411 F.Supp.2d at 645.

[34] Harbour Town Yacht Club, 411 F. Supp. 2d 641, 644 (citing *Ashworth v. Albers Medical, Inc.,* 229 F.R.D. 527, 530 (S.D.W.Va.2005)).

(1) the interest of the plaintiffs in proceeding expeditiously with [the] litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay, (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.[35]

These same or substantially similar factors have been adopted by other courts.[36] Other courts have noted the importance that the party moving for a stay show that the *parallel proceedings are related and involve substantially similar issues.*[37] *The propriety of a stay is determined on a case-by-case analysis.*[38]

### iii. Analysis of Standard from *Walsh Securities*

As the federal investigation has just launched, Officer Kirkman cannot represent to this Court that an indictment has been returned against him concerning the August 3, 2017 incident that is at issue in the present litigation. What is clear is that Officer Kirkman is the subject of an FBI letter to his Police Chief stating a federal investigation against him directly resulting from force employed in this arrest was being commenced in June 2020.[39] It is also in the record before this Court that Criminal Counsel Lofton in a letter before this

---

[35] *Keating v. OTS*, 45 F.3d 322, 325 (9th Cir.1995).

[36] *Trustees of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mechanical, Inc.,* 886 F.Supp. 1134, 1139 (S.D.N.Y. 1995) (noting substantially same factors as *Keating*). [other citations omitted].

[37] *United States v. Mellon Bank, N.A.,* 545 F.2d 869 (3rd Cir. 1976); *SEC v. Healthsouth Corp.,* 261 F.Supp.2d 1298, 1326 (N.D.Ala. 2003); *Shane Co.,* 147 F.R.D. at 101; *St. Paul Fire & Marine Ins. Co.*, 24 Cl.Ct. at 515.

[38] *Afro-Lecon, Inc.*, 820 F.2d at 1202; *Dresser,* 628 F.2d at 1375; *Ashworth*, 229 F.R.D. at 530-31 [emphasis added].

[39] EFC no. 3201 through 32-8, Affidavit of Scott, Paragraph 3, **Exhibit A**.

Court expresses that his legal advice to his client is that he not provide statements, affidavits or depositions in either the civil or federal cases to protect his Fifth Amendment right against self-incrimination.[40]   We are at the deposition stage of this case and these Defendants cannot proceed without being forced to abandon their fifth amendment privilege.

Officer Kirkman  and the joining Defendants respectfully urge this Court to favorably consider the instant motion and issue an order by which all activity in the instant matter is stayed, and, in doing so, he respectfully directs the Court's attention to the decision issued in *Walsh Securities* and relied upon by this Court in granting the defendant's motion to stay in *Reeves v. Town of Cottageville*.[41]

In *Walsh Securities*, a federal court in New Jersey confronted a motion by several defendants to stay proceedings in a civil action pending the outcome of a parallel criminal investigation.[42]   In *Walsh Securities*, the plaintiff initiated a civil suit against multiple defendants for RICO violations, common-law fraud claims, and breach of contract claims against various defendants.[43]   After suit was filed, the United States Attorney's Office began investigating whether the transactions at issue in the suit amounted to criminal conduct.[44]   Several of the named defendants confirmed that they were the targets of said investigation and subsequently moved for a stay of the civil proceedings pending the

---

[40] EFC no. 3201 through 32-8, Affidavit of Scott, Paragraph 11, **Exhibits D and E**.
[41] *Reeves v. Town of Cottageville*, No. 2:12-CV-02765-DCN, 2013 WL 1566635, at *1 (D.S.C. Apr. 12, 2013) (citing *Walsh Securities, Inc., v. Cristo Property Management, Ltd.*, 7 F.Supp.2d 523 (D.N.J. 1998))
[42] *Walsh Securities*, 7 F.Supp.2d at 525-26.
[43] *Id.*
[44] *Id.*

outcome of the criminal investigation.[45]  The individuals argued that they "*[could not] fully participate in civil discovery and protect their Fifth Amendment rights.*"[46]

The Court in *Walsh Securities* began its analysis by articulating the following standard:[47]

> A court has discretion to stay a case if the interests of justice require it.[48]  A stay of a civil case where there are pending criminal proceedings is not constitutionally required, however, it may be warranted in certain circumstances.[49]

> A stay of a civil case is an "extraordinary remedy."[50]  The factors to be considered in deciding whether to grant a stay include: *1) the extent to which the issues in the criminal and civil cases overlap; 2) the status of the case, including whether the defendants have been indicted; 3) the plaintiff's interest in proceeding expeditiously weighed against the prejudice to plaintiff caused by a delay; 4) the private interests of and burden on defendants; 5) the interests of the court; and 6) the public interest.*[51]

In analyzing the <u>first</u> of the six (6) factors, the extent to which the civil and criminal cases overlapped, the Court in *Walsh Securities* held that the similarity of issues has been termed "*the most important issue at the threshold*" in determining whether or not to grant a stay.[52]  The Court reasoned that there was no dispute that the relevant civil and criminal cases involved many of the same issues arising out of the.[53]  The fact that the parallel

---

[45] *Id.*

[46] *Id.* [emphasis added].

[47] *Walsh Securities*, 7 F.Supp.2d at 526-27.

[48]  *United States v. Kordel*, 397 U.S. 1, 12 n. 27 (1970).

[49] *Trustees of Plumbers and Pipefitters National Pension Fund v. Transworld Mechanical, Inc.*, 886 F.Supp. 1134, 1138 (S.D.N.Y.1995).

[50] *Weil v. Markowitz*, 829 F.2d 166, 174, n. 17 (D.C.Cir. 1987).

[51] *Trustees of Plumbers & Pipefitters Nat'l Pension Fund,* 886 F.Supp. at 1139 (emphasis added).

[52] *Walsh Securities*, 7 F.Supp.2d at 527 (citing Milton Pollack, *Parallel Civil and Criminal Proceedings,* 129 F.R.D. 201, 203 (1989)) (emphasis added).

[53] *Id.*, 7 F.Supp.2d at 527.

criminal investigation largely involved the same transactions as the civil complaint weighed heavily in favor of a stay.[54]

As in *Ashworth*, the Court in *Walsh Securities*, began its analysis of the second of the six (6) factors by acknowledging that while not an absolute bar, pre-indictment requests for stays are generally denied. Notwithstanding the general rule, the Court in *Walsh Securities*, continued with its analysis, finding that each case must be evaluated individually on its merits.[55] The Court stated that "*[i]t is 'still possible' to obtain a stay, even though an indictment or information has not yet been returned, if the Government is conducting an active parallel criminal investigation.*"[56] In that case, though no indictments had been handed down, the Government had executed search warrants and issued subpoenas to several defendants, the defendants had been informed that they were targets of the criminal investigation, and the Government had indicated to the Court that the investigation was continuing.[57] The Court continued in its analysis that although no indictments had been returned, the action presented a strong case for a stay as "interrogatory and deposition discovery poses a *substantial risk of self-incrimination.*"[58]

The Court in *Walsh Securities* determined that the plaintiff would not be prejudiced if it granted the defendants' motion, and, therefore, it determined that the third of the six (6) factors supported the imposition of a stay.[59] Among the considerations the Court

---

[54] *Id.*

[55] *Volmar Distributors, Inc. v. New York Post Co.,* 152 F.R.D. 36, 38 (S.D.N.Y. 1993).

[56] *Walsh Securities*, 7 F.Supp.2d at 527 (citing *Parallel Proceedings,* 129 F.R.D. at 204) (emphasis added).

[57] *Id.*, 7 F.Supp.2d at 527.

[58] *Id.* (emphasis added).

[59] *Id.*, at 528.

made were the potential for memories to fade or assets to dissipate.[60]  In the instant case, as the entirety of the events complained of in this matter are captured by multiple body-worn and vehicle-dash mounted cameras, the potential for memories to fade regarding this incident is highly unlikely.  Additionally, the Court pointed to the fact that delays in civil cases are quite common and avoidance of such delays should not outweigh the interests of justice.[61]

In assessing the burden upon the various defendants, the fourth of the six (6) factors, the Court in *Walsh Securities* reasoned that if the civil case were to proceed, the individual defendants in the matter who were targets of the federal investigation would be forced to choose between waiving their Fifth Amendment rights and defending themselves properly in the civil lawsuit or asserting the privilege and probably losing the civil case.[62]  Further, the Court stated that although the Supreme Court has held that it is not unconstitutional to force a defendant into this choice,[63] a court may nevertheless exercise its discretion to stay the civil case in the interests of justice.[64]  Ultimately, the Court in *Walsh Securities* determined that staying all answers, interrogatory and deposition discovery would avoid placing the defendants in this position.[65]

In evaluating the court's interests, the fifth of six (6) factors in the standard, the Court in *Walsh Securities* determined that "[w]ithout a stay, interrogatory and deposition discovery would likely cause inefficiency, because several defendants will be forced to

---

[60] *Id.*
[61] *See id.*
[62] *Id.*
[63] *See Baxter v. Palmigiano,* 425 U.S. 308, 318-19 (1976).
[64] *Brock v. Tolkow,* 109 F.R.D. 116, 119 (E.D.N.Y. 1985).
[65] *Walsh Securities*, 7 F.Supp.2d at 528.

assert Fifth Amendment privileges."[66]  The Court found that denying the stay would not only burden the Magistrate Judge and the Court with having to decide a constant stream of privilege issues, but that if some defendants were forced to assert the privilege while others were not, it would be difficult or impossible to fairly apportion liability because of the differing factual record among defendants.[67]  Although, it is not constitutionally prohibited to force defendants into choosing between asserting their Fifth Amendment privileges or adequately defending themselves in a civil suit, the Court in *Walsh Securities* found that the substantial likelihood for an unjust result outweighs the efficiencies gained by allowing the case to proceed.[68]

Finally, concerning the public interest, the sixth and final factor, the Court in *Walsh Securities* concluded that there is no harm to the public interest in granting a stay of the civil case.[69]  In fact, the Court found that a stay in that case would benefit the public by allowing the Government to conduct a complete, unimpeded investigation into potential criminal activity, wherefore, the public interest weighs in favor of a stay.

Thus, after concluding its analysis of all six (6) factors, the Court in *Walsh Securities*, granted the motion and stayed "all interrogatory and deposition discovery" for a period of nearly five (5) months from the date of the decision.

### iv.  Analysis of Standard from *City of Demopolis*

In so urging the Court to favorably consider his instant motion, Officer Kirkman and the joining Defendants also respectfully directs the Court's attention to the decision issued

---

[66] *Id.*
[67] *Id.*, at 528-29.
[68] *Id.*, at 529.
[69] *Id.*

in *Doe 1 v. City of Demopolis*.[70]  In *City of Demopolis*, a federal judge considered a stay motion filed by a police officer under circumstances similar to the circumstances here.  In considering the officer's motion to stay, the Court applied the identical six (6) factor standard applied in *Walsh Securities*.[71]   However, the Court in *City of Demopolis* relied upon different precedent in articulating the standard.[72]  Significantly, the Court stated that "although many factors may be relevant, 'the similarity of issues in the underlying civil and criminal actions is considered the most important threshold issue in determining whether to grant a stay.'"[73]

In that case, the Court found that the issues in the criminal investigation and civil trial was substantially similar and the plaintiff had not identified any significant prejudice she would suffer if the proceedings were stayed.  As a result, the Court found, within its discretion, that the interests of justice favor entry of a stay of the action in deference to the pending, parallel criminal proceedings against the defendant officer in state court.[74]

## C. A STAY OF THE INSTANT CIVIL PROCEEDINGS IS WARRANTED, AND THIS COURT SHOULD GRANT OFFICER KIRKMAN'S INSTANT MOTION

Under the standard analysis set forth in both *Walsh Securities* and *City of Demopolis*, the stay sought by Officer Kirkman and the joining Defendants in their joint motion is warranted.

---

[70] *Doe 1 v. City of Demopolis*, 2009 WL 20593411 (S.D.Ala. 2009).

[71] *Id.*, at 2.

[72] *Id.*, at 3.

[73] *Id.* (citing *Dominguez v. Hartford Financial Services, Group, Inc.,* 530 F.Supp.2d 902, 906 – 07 (S.D.Tex. 2008)]; *see also Fleming,* 498 F.Supp.2d at 1039 (degree of overlap is "the most important factor" because absent such overlap there would be no need for a stay)) (internal citations omitted).

[74] *Id.*

First and foremost, the issues in the on-going parallel criminal investigation being conducted by federal authorities completely overlap with the issues associated with the instant proceeding. Both the parallel criminal investigation and the Plaintiffs' Complaint target Officer Kirkman's purported culpability in the August 3, 2017 incident involving himself, Officer Swinehamer, Officer Gibson and Mr. Ellis which resulted in Mr. Ellis's injuries. Just as in both *Walsh Securities* and *City of Demopolis*, the similarity between the two matters is, by way of great understatement, substantial. Further, the record before the Court is clear that federal authorities decline to take any position that Defendants Swinehamer and Gibson are not additional targets of the investigation.

As discussed above, no indictment has been returned against Officer Kirkman by a federal grand jury for any criminal offense associated with Mr. Ellis's injuries on August 3, 2017. However, given the expansive news coverage and the correspondence from the Federal Bureau of Investigation to the Chief of the Bluffton Police Department the parallel criminal investigation chronicled Section II(B) above, as well as the letter of Mr. Kirkman's Legal Counsel Lionel Lofton which details his conversations with Assistant US Attorney Garner indicating that they did not expect a prosecutorial decision until late 2020 or early 2021 and that the FBI investigation was ongoing, the threat of prosecution remains real and present.[75] Further as addressed in the record Criminal Counsel Lofton in a letter before this Court expresses that his legal advice to his client is that he not provide statements, affidavits or depositions in either the civil or federal cases to protect his Fifth Amendment right against self-incrimination.[76] As we are at the deposition stage of this

---

[75] EFC no. 3201 through 32-8, Affidavit of Scott, Paragraph 13, **Exhibits E and F**.
[76] EFC no. 3201 through 32-8, Affidavit of Scott, Paragraph 11, **Exhibits D and E**.

case, these Defendants cannot proceed without being forced to abandon their fifth amendment privilege and face profound exposure in any potential federal prosecution that results from the on-going parallel criminal investigation.

The Plaintiff would not be prejudiced if this Court granted Officer Kirkman's instant motion to stay these proceedings. Plaintiff's counsel filed the Complaint in federal court on August 2, 2019, slightly less than 24 months after the events of August 3, 2019.  On the other hand, as they still faces the potential for profound exposure in any potential federal prosecution, Officer Kirkman and the joining named Defendants face the burden of attempting to protect their financial interests in the instant civil litigation while simultaneously attempting to safeguard their liberty interests in confronting any potential indictment and prosecution that may result from the on-going parallel criminal investigation by federal authorities.   Officer Kirkman and joining Defendants unquestionably face the stark choice, described in *Walsh Securities*, of either waiving their Fifth Amendment rights in order to defend themselves in the instant case or asserting the privilege and potentially losing the instant case.  Furthermore, any information that Officer Kirkman or the joining officers provide in defending themselves in the instant case could, as contemplated in *Maness*, *Hoffman*, *Sharp*, and *Grossheusch*, "furnish a link in the chain of evidence" assembled by federal authorities and result in his indictment and prosecution.

Finally, Defendants respectfully submit that the public's interest would be best served by the Court granting his instant stay request, as a stay would allow federal authorities to conduct a complete, unimpeded investigation into the events of August 3, 2017.  Plaintiff's counsel himself recognized the public's interest in such an outcome in

the statement he made to press at The Island Packet release on February 28, 2020 when he stated that "[i]f we don't stand up when these things happen and make the public aware, then it just keeps happening" and again in a statement to The Island Packet on August 6, 2020 when he stated that he was aware of the federal criminal investigation and that "[he] think[s] that it is a good thing that an independent body looks into these kinds of things" and "I think it's good for the community" for authorities to conduct a criminal investigation.

Thus, Defendants respectfully urge this Court to grant the instant motion and impose a stay upon all proceedings in the instant matter.

### D. DURATION OF STAY SOUGHT BY DEFENDANTS

As he has discussed throughout his instant motion, Officer Kirkman moves this Court to stay all proceedings in the instant matter for no less than 90 days. In assessing the length of the stay for which he moves, Officer Kirkman is mindful of the decision issued by Senior Judge Herlong, in *Maracich v. Spears*:

> The court is cognizant of the Plaintiffs' concerns regarding an indefinite stay and finds that "an indefinite stay should not be granted.... The United States Supreme Court has stated that stay should be 'not immoderate in extent and not oppressive in its consequence.'"[77]

The facts and circumstances in *Maracich* are distinguishable from the facts and circumstances here in that the parties who moved for a stay did so out of concern that discovery would result in the disclosure of attorney-client privileged and work product information generated in a related case. [78] Nonetheless, Judge Herlong relied upon

---

[77] *Maracich v. Spears*, 2010 WL 358128, *3 (D.S.C. 2010) (citing *Ashworth*, 229 F.R.D. at 532-33) (citations omitted).
[78] 2010 WL 358128, *1-*2.

*Ashworth* in the above-quoted passage from his decision in *Maracich*, and he ultimately imposed a stay of all proceedings in the case of six (6) months.

The Court in *Walsh Securities* imposed a stay which lasted nearly five (5) months (i.e. from June 9, 1998, the date of the Court's decision, through November 1, 1998).

The Court in *City of Demopolis* determined the duration of the stay it imposed as follows:

> That said, the Court will not authorize an indefinite stay, but will instead monitor the criminal proceedings closely to ensure that this stay remains in place no longer than necessary. In that regard, Smith is ordered to file status reports every 60 days, with the first such report to be due on or before August 1, 2009. Those reports must, at a minimum, state the current posture of the state court proceedings, including any trial setting and other deadlines that might reasonably bear on the propriety of a continuing stay in this case. Additionally, Smith is ordered to notify the Court promptly in writing upon the conclusion of the Marengo County Circuit Court action.[79]

The Court in *Fleming*, one of the two (2) decisions primarily relied upon by the Court in *City of Demopolis*, imposed a 90-day stay of the entire proceeding.[80]

Likewise, Defendants respectfully submit that a stay of all activity in the instant matter of no less than 90 days is appropriate. A stay of this length would cease all activity in the instant matter until early 2021 at which time the issues could be reevaluated, and, thereby, allow federal authorities sufficient time to conclude their on-going parallel criminal investigation into the events of August 3, 2017. As in *City of Demopolis*, Defendants are perfectly willing to provide this Court with status reports concerning the on-going parallel criminal investigation at any interval it deems appropriate so that this

---

[79] *City of Demopolis*, 2009 WL 2059311 at *4.
[80] 498 F.Supp.2d at 1041.

Court may effectively monitor the investigation's progress.  Moreover, these reports would provide the Court with sufficient and contemporaneous information by which it may assess whether any extension of the stay after the initial 90-day period is warranted.

## IV.  CONCLUSION

Accordingly, Officer Kirkman and the joining Defendants respectfully submit that, in light of the above provided facts, analysis, and argument, this Court should grant his instant motion and stay all activity in the instant matter for no less than 90 days.

Respectfully submitted.

LAW OFFICES OF CHRISTY L. SCOTT, LLC

By:     s/Christy L. Scott_____
Christy L. Scott, Federal ID No. 6215
Post Office Box 1515, 108 Carn Street
Walterboro, SC  29488
(843) 782-4359

ATTORNEY FOR DEFENDANTS
Cody C. Kirkman, Individually and as an Officer of Town of Bluffton Police Department; Amber Swinehamer, (mistakenly spelled Swinehammer), Individually and as an Officer of Town of Bluffton Police Department; Lindsey Gibson, sued individually and as a former police officer of the Bluffton Police Department, and the Town of Bluffton Police Department

September 30, 2020

Walterboro, South Carolina