IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Ted D. Ellis and Teresa Ellis, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C/A No.: 9:19-cv-2163-RMG-MGB |
| | ) | |
| Cody C. Kirkman, individually; Amber | ) | |
| Swinehammer, individually; Lindsey | ) | OBJECTION TO DEFENDANTS MOTION |
| Gibson, individually; Cody C. Kirkman, | ) | TO STAY |
| Amber Swinehammer, and Lindsey | ) | |
| Gibson, as agents/officers of Town of | ) | |
| Bluffton Police Department; and Town | ) | |
| Of Bluffton Police Department | ) | |
| | ) | |
| Defendants. | ) | |
| _____ _____ | ) | |

COMES NOW Plaintiffs, Ted and Teresa Ellis, who object to Defendants' Motion
and request for a stay of this litigation. For the reasons explained below, a stay that stops
this case from moving forward is not warranted, and Plaintiffs would suffer great prejudice
from such a delay.

## Background

1. **Statement of the Case**.  On August 03, 2017, Defendant Kirkman, a Bluffton police
   officer, was on patrol duty and conducted a traffic stop on Plaintiff Ted Ellis. Officer
   Kirkman informed Ted Ellis of the reason for the stop, that the tag on the vehicle had
   been suspended due to lack of insurance.  Officer Kirkman asked Ted Ellis for his
   driver's license and registration.  Ted Ellis submitted the registration to the officer and
   informed the officer that he did not have his license in his possession.  Upon returning
   to his patrol vehicle, Defendant Kirkman was informed that the Ted Ellis's license had

been suspended for several years due to unpaid traffic tickets.  After deciding to take Ted Ellis into custody, Defendant Kirkman radioed fellow officer Gibson to respond to the scene to assist.  At that time Defendant Swinehammer also responded she would be present to assist.  Once those officers arrived on scene, Defendant Kirkman informed them that he would be taking Ted Ellis into custody.

2. **Undisputed Material Facts**.

Defendant Kirkman, has been and still is employed with the Bluffton Police Department.  It was in his capacity as a patrol officer that he approached Ted Ellis on this specific date and time.  After the initial encounter with Defendant Kirkman, Mr. Ellis remained in his vehicle and was on the phone.  However, once Defendant Kirkman directed Ted Ellis to turn off his ignition, he complied.  Ted Ellis also complied when Defendant Kirkman asked him to exit his vehicle.  Even as he voiced his disapproval of the situation, he continued to comply in turning around and facing his vehicle while he was placed in hand cuffs double locked behind his back.

Ted Ellis, clothed only in basketball shorts and an undershirt, was searched by Defendant Kirkman.  Defendant Kirkman, along with Defendant Swinehammer, then led Ted Ellis to Kirkman's police issued SUV.  Upon reaching the SUV, Defendant Kirkman informs Ted Ellis that he needs to search him once more.  Ted Ellis replies that he has already been searched. Defendant Kirkman continued to insist on conducting another search of Ted Ellis's person.  Ted Ellis continued to ask that he just be placed in the police car. Defendant Kirkman continues to get visually and audibly more aggressive, while clearly conducting the search he claims Mr. Ellis was arguing against.

After a few moments of this exchange, Defendant Kirkman yells "No!", suddenly and abruptly dropped his upper body down, reached out and grabbed both of Ted Ellis' legs below his knees and jerked both of his legs up to Defendant Kirkman's standing waist height. Ted Ellis, a 6'4" adult African-American male, was cuffed behind his back at this time.

As a direct and proximate result of Defendant Kirkman's intentional, improper, and excessive use of force in jerking Plaintiff Ted Ellis feet up to waist height, Mr. Ellis fell face-first onto the asphalt of the road way, impacting the side of the police vehicle on the way down, suffering immediate sever traumatic injury to his teeth, jaw, and cranium. Due to the fact that he was handcuffed behind is back, he was unable to stop or do anything to hinder his fall directly to his face. Mr. Ellis head impacted the paved road so violently that his blood spurted up and onto the outside of the police vehicle's door almost to the window. Defendant Kirkman followed with a knee to Ted Ellis's back. Although there was never a physical struggle from Ted Ellis, Defendant Kirkman kept his knee pinned on Ted Ellis's back for approximately 7 minutes.

Defendant Gibson assisted Defendant Kirkman by restraining Plaintiff Ted Ellis' legs and holding his feet down for approximately 4 minutes.

Defendant Swinehammer was present and recording the events that occurred, but failed to render aid to Ellis despite seeing Defendant Kirkman remove Ted Ellis' feet from under him and Ted Ellis' chin striking the pavement. She observed Ted Ellis "laid out on the ground" and bleed from his chin. She appears to laugh after Ted Ellis's head bounces on the pavement. Later, she also directed fire personnel to rinse Ted Ellis' blood from SUV.

Defendant Swinehammer also made several attempts to physically cover the lens of her body camera with her hand when Ted Ellis is in her viewing area so that his image is not completely captured by the camera.

Neither Defendant Gibson or Defendant Swinehammer attempted to intervene when their fellow officer was obviously becoming more agitated and aggressive and no steps were made to de-escalate the situation.

All of these actions were captured on video tape. In fact, there are several videos from different perspectives of the incident, including body cam and dash cam video from the officers. All of these videos originated with the Bluffton Police Department.

In June, the Bluffton Police Department received a letter notifying them that the FBI was investigating this incident for criminal violations of Federal Civil Rights statutes. This was approximately ten (10) months after Plaintiffs filed this action. Counsel for Plaintiffs was contacted by Special Agent George French with the Hilton Head office of the FBI. At this time, SA French made it clear that this investigation was instigated independently by the FBI and not at the request of anyone. Additionally, SA French stated that this investigation was not intended or meant to interfere with Mr. Ellis' and his wife's civil case against the Defendants.

**DEFENDANTS' REQUEST FOR A STAY OF THIS CASE SHOULD BE DENIED.**

Counsel for the Defendants expounds in length about how Defendants have the right to assert their Fifth Amendment right against self-incrimination in civil proceedings, citing cases like *Maness*, *Hoffman*, and *US v. Sharp*. This is a red herring because the Plaintiffs' do not dispute that the individual Defendants Kirkman, Swinehammer, and

Gibson have the right to assert the Fifth Amendment and refuse to answer questions in this proceeding. These Defendants have had that right from the moment this incident occurred in 2017. In fact, their Fifth Amendment rights have been protected even further by the FBI pursuant to *Garrity*, which requires any statements made by the officers during their departments internal use of force review be redacted and not looked at by the investigating agents.

Contrary to the assertions of Defense Counsel, this court has previously denied such stays in similar matters. In *Reeves v. Cottageville,* the court considered and balanced several factors in denying the Motion to Stay. "Although the Fourth Circuit has not adopted an explicit set of factors to consider when determining whether to implement a stay, at least one court within the circuit has applied a five-factor test adopted by a variety of courts across the country. In Ashworth, the court applied the following factors when determining whether to grant a motion to stay: (1) the interest of the plaintiffs in proceeding expeditiously with [the] litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay, (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation. Id. at 530. While a party need not be formally indicted to exercise the privilege against self-incrimination, the likelihood of a potential forthcoming indictment may affect the court's decision on whether to grant the stay or on the duration of the stay. See id. at 531; *Harbour Town*, 411 F. Supp. 2d at 643; Shane Co., 147 F.R.D. at 101. Additionally, stays generally are not granted before an indictment has issued." In

the present case, no indictments have been issued against the Defendants. Plaintiff filed this case in August 2019. The FBI did not begin to investigate this matter until June 2020.

There is no indication that a stay of 120 days will be enough for the federal government to decide if they are going to pursue charges. As such, the possibility of charges can linger forever. And as there is no statute of limitations for criminal offenses in South Carolina and the Defendants' actions are caught on video, there is no guarantee that any stay will resolve the Defendant's predicament of asserting their Fifth Amendment rights. The Plaintiffs should not be made to wait any longer than they already have to get justice. There is no statute or case law that asserts that a defendant's rights in a civil or criminal matter outweigh those of the Plaintiff. "The court certainly has an interest in managing its case load efficiently, just as the parties have an interest in having this case litigated in an efficient manner." *Reeves v. Town of Cottageville* (D. S.C. 2013). "A stay in this type of case is often relatively indefinite, because there is no way to predict when the criminal investigation would end. One court has concluded that this uncertainty weighs against a stay: "[I]t is unrealistic to postpone indefinitely the pending action until criminal charges are brought or the statute of limitations has run for all crimes conceivably committed by [the defendants]." *Walsh Securities v. Cristo Property Management*, 7 F.Supp.2d 523 (D. N.J. 1998)

Defendant counsel has made much about the attitudes and perceptions of law enforcement in this era of time. Plaintiff will submit that this directs factor 4 of the Ashworth factors as the interests of persons not parties to the civil litigation are implicated here. In the time of increasing news of police brutality and conduct, the public as a whole deserves these cases to be efficiently adjudicated. The country is crying out for justice in

these cases and history and current events have taught us that criminal prosecutions have not been the avenue that most victims and the affected families have achieved justice. They have only achieved justice in most cases through the civil process. The Defendants are asking the court to deny Plaintiffs' their right to an efficient avenue of what may be the only measure of justice that they receive. Defendants are not prejudiced by the fact that they may choose to assert their Fifth Amendment privilege, that is their choice. However, that is no reason to stay this matter indefinitely or for any time at this point in the litigation. Unlike in *Reeves*, this case does affect the public interest.

This matter is distinguishable from *Walsh Securities* that has been relied on by Defendants' Counsel. In that matter there were several Defendants that had filed cross complaints against each other. The court had to consider how that would affect their disclosure of information and the fact that they may inadvertently reveal their defense strategies to their co-Defendants. That is not the case here. Also, unlike *Walsh* where there had been search warrants executed and other parts of the criminal process had begun, there have been no search warrants served or executed. In this matter, the federal agents have only begun their inquiry into possible charges.

**CONCLUSION**

Multiple cases cite to the fact that a stay is an extraordinary remedy reserved for only the most extraordinary of cases. In weighing the factors that have been indicated by this court, this case is not one of those cases. As such, Defendants' Motion to Stay should be denied.

October 6, 2020

s/ Arie D. Bax
FEDERAL ID #: 10340
The Bax Law Firm
10 Sams Point Way  Ste B-1 PMB 138
Beaufort, SC 29907
Phone: (843) 522-0980 Fax: (843) 379-3115
ATTORNEY FOR THE PLAINTIFFS