IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Ted D. Ellis and Teresa Ellis, | C/A: 9:19-cv-2163-RMG |
| Plaintiffs, | |
| v. | **ORDER AND OPINION** |
| Cody C. Kirkman, Individually, *et al.*, | |
| Defendants. | |

Before the Court is the Report and Recommendation ("R&R") (Dkt. No. 200) of the Magistrate Judge recommending that the Court grant Defendant Kirkman's Motion for Summary Judgment as to Claims of Teresa Bush (Dkt. No. 127), Defendant Town of Bluffton Police Department's Amended Motion for Summary Judgment (Dkt. No. 134), and Defendant Swinehamer's and Defendant Gibson's Motion for Summary Judgment (Dkt. No. 169). The R&R further recommends that the Court grant in part and deny in part Defendant Kirkman's Motion for Summary Judgment as to Claims of Ted Ellis (Dkt. No. 170). Specifically, the R&R recommends that Plaintiff's § 1983 excessive force claim against Kirkman survive and that all other claims against Kirkman be dismissed. For the reasons set forth below, the Court rules as follows.

I. **Background and Relevant Facts**

Plaintiff brings this action alleging violations of 42 U.S.C. § 1983, negligence, gross negligence, negligent training and supervision, loss of consortium, assault, and intentional infliction of emotional distress. (Dkt. No. 1).

All defendants moved for summary judgment. (Dkt. Nos. 127, 134, 169, 170).

On April 18, 2023, the Magistrate Judge filed an R&R recommending that all Defendants be granted summary judgment in full except for Kirkman. As to Kirkman, the Magistrate Judge

recommended denying Kirkman's motion as to Plaintiff's § 1983 excessive force claim but granting Kirkman's motion as to all other claims. (Dkt. No. 200).

Kirkman filed objections to the portion of the R&R denying summary judgment on Plaintiff's § 1983 excessive force claim. (Dkt. No. 204). Plaintiff filed a response to Kirkman's objections. (Dkt. No. 207). Because no party filed objections to any other finding in the R&R, and finding no clear error therein, the Court adopts those parts of the R&R dismissing all claims except Plaintiff's § 1983 claim against Kirkman, which the Court discusses below.

## II.  Legal Standards

### a.  Fed. R. Civ. P. 56

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *See id.* Therefore, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).

"In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The movant bears the initial burden of demonstrating that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment must demonstrate that specific,

material facts exist that give rise to a genuine issue. *See id.* at 324. Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### b. Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where the plaintiff fails to file any specific objections, "a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (internal quotation omitted). Because Kirkman filed objections to the R&R, the R&R is reviewed de novo.

### III. Discussion

In his complaint, Plaintiff alleges that Defendant Kirkman used excessive force during a traffic stop which Kirkman and Swinehamer conducted. The traffic stop occurred at the side of a road during daytime and was recorded from multiple angles. The Court has reviewed video synchronizing Kirkman and Swinehamer's respective dashcam and bodycam footage. (Dkt. No. 194-1) (the "Video"). The Court has reviewed the Video *de novo* and finds as follows.

Kirkman pulled over Plaintiff after a license plate reader showed that Plaintiff's vehicle had a suspended registration. Kirkman approached Plaintiff's vehicle and told Plaintiff that the tag on the vehicle was suspended due to lack of insurance. Kirkman then asked for Plaintiff's driver's license and registration. Plaintiff provided the registration but told Kirkman that he did not have his license with him. Kirkman returned to his vehicle to run Plaintiff's information.

While Plaintiff's information was being run, Kirkman returned to Plaintiff's vehicle. Upon returning to Plaintiff's vehicle, Kirkman observed Plaintiff yelling to his wife on the phone that he was not speeding but that Kirkman had informed him the car's tag had been suspended. (Dkt. No. 194-1 at 0:06:21). After telling Plaintiff to calm down, Kirkman asked for insurance papers, to which Plaintiff threw open the glove box and responded "Man, I ain't have no damn . . . pissed off right now." (*Id.* at 0:06:41). Plaintiff then handed Kirkman his insurance information. Around this time, Swinehamer arrived at the scene as backup. (*Id.* at 0:07:00.) Kirkman informed Swinehamer that he planned to arrest Plaintiff because Kirkman had discovered that Plaintiff's license was suspended, and Plaintiff had previously driven under a suspended license four or five times. (*Id.* at 0:07:48).

Kirkman then returned to Plaintiff's car and asked Plaintiff to step out of his vehicle. Plaintiff got out of the car, turned to face it, and Kirkman began to handcuff Plaintiff. As Kirkman was placing handcuffs on Plaintiff, Kirkman told Plaintiff that in addition to the vehicle tag being suspended, Plaintiff's license was suspended, to which Plaintiff responded, "I know that." (*Id.* at 0:09:04). Plaintiff then began to turn away from his vehicle, which Kirkman told Plaintiff to stop doing and to which Plaintiff responded, "Just put me in the fucking car." (*Id.* at 0:09:16). Seconds later, Plaintiff turned fully to his left and began to walk back toward his car's passenger side door.

(*Id.* at 0:09:23). Kirkman told Plaintiff to stop, to which Plaintiff responded, "You got me in handcuffs doing that. I'd beat your pussy ass if I wasn't in no fucking handcuffs." (*Id.* at 0:09:28).

Kirkman then led Plaintiff to his police vehicle by the arm. While walking to the police vehicle, Plaintiff stated "Ask your officers around here. Ask your chief. I knocked his fucking ass out. You better ask him. Shit I don't play around, period. Period." Once Plaintiff was leaning against the police vehicle, Kirkman began to search Plaintiff's front pockets. (*Id.* at 0:10:00). Throughout the search, Plaintiff continued to speak and fidget, attempting again at one point to turn toward Kirkman. (*Id.* at 0:10:12). After searching Ellis's front pockets, Defendant Kirkman told Plaintiff to back away from the police vehicle. (*Id.* at 0:10:07). Plaintiff continued to move around slightly and Kirkman told Plaintiff to stop moving and stated that if Plaintiff did not stop moving, he would "put [Plaintiff] on the ground." Plaintiff responded, "What you gonna do? I got handcuffs on. Open this door." Kirkman explained he needed to complete patting Plaintiff down and reiterated that Plaintiff stop moving. (*Id.* at 0:10:18).

Without warning, Kirkman then grabbed Plaintiff by the lower portion of his legs, causing Plaintiff to fall to the ground, landing face-first on the pavement. Once Plaintiff was on the ground, Defendant placed his knee on Plaintiff's back, holding him to the ground. At that point, Plaintiff stated, "I will find your pussy ass, I swear to god. . . . You best believe that. You better get me the fuck off this ground." (*Id.* at 0:10:46). Another police officer held Plaintiff's legs and feet. While on the ground, Plaintiff continued to voice his discontent. A stream of blood flowed from Plaintiff's chin during this time. Kirkman attempted to help Plaintiff with his injury, but Plaintiff refused his assistance. Plaintiff remained face-down on the ground for approximately nine minutes. Emergency Medical Services arrived, treated Plaintiff's injuries, and Plaintiff was transported to the Emergency Room.

Due to the fall, and reading all facts in a light most favorable to him, Plaintiff sustained damage to his teeth, (Dkt. No. 194-4 at 3), a jaw fracture, facial and chin lacerations, a head injury, a cervical sprain, and post concussive syndrome. (Dkt. No. 194-5).

"The Fourth Amendment prohibition on unreasonable seizures bars police officers from using excessive force to seize a free citizen." *Graham v. Connor*, 490 U.S. 386, 395 (1989). This Court must analyze whether an officer's actions were objectively reasonable in determining if the force brought to bear was excessive. *Id.*; *Stanton v. Elliott*, No. 21-1197, 2022 WL 288012, at *4 (4th Cir. Feb. 1, 2022) (citing *Elliott v. Leavitt*, 99 F.3d 640, 642–43 (4th Cir. 1996)); *E.W. by & through T.W. v. Dolgos*, 884 F.3d 172, 179 (4th Cir. 2018). "Determining the reasonableness of an officer's actions 'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Dolgos*, 884 F.3d at 179 (quoting *Graham*, 490 U.S. at 396); *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003).

Courts evaluate the following three factors when determining if the force used by an officer was reasonable: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Dolgos*, 884 F.3d at 179 (quoting *Graham*, 490 U.S. at 396). Courts may additionally consider "other 'objective circumstances potentially relevant to a determination of excessive force.'" *Id.* (quoting *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015)). For example, the "extent of the plaintiff's injuries is also a relevant consideration." *Buchanan*, 325 F.3d at 527. However, "[s]ubjective factors involving the officer's motives, intent, or propensities are not relevant." *Pegg v. Herrnberger*, 845 F.3d 112, 120 (4th Cir. 2017) (quoting *Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994)). "The ultimate question is whether the totality

of the circumstances justified a particular sort of seizure." *Dolgos*, 884 F.3d at 179 (quotations and citations omitted).

When a qualified-immunity defense is raised, the Court applies a two-prong test to determine the following: (1) whether the facts viewed in Plaintiff's favor make out a violation of his constitutional rights, and (2) whether that violated right was clearly established at the time. *Stanton v. Elliott*, No. 21-1197, 2022 WL 288012, at *4 (4th Cir. Feb. 1, 2022); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Plaintiff bears the burden on the first prong, and Defendants bear the burden on the second prong. *Stanton*, 2022 WL 288012, at *4 (citing *Henry v. Purnell*, 501 F.3d 374, 377–78 & n.4 (4th Cir. 2007)).

When inquiring whether a constitutional right is clearly established, a court must first "define the precise right into which [it is] inquiring." *Est. of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 907 (4th Cir. 2016). After defining the right, the court then asks whether it was clearly established at the time the officers acted. *Id.* A right satisfies this standard when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015); *Hill v. Crum*, 727 F.3d 312, 321 (4th Cir. 2013).

For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate," *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *see City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015) ("This exacting standard gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") (internal quotation marks omitted). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-

existing law the unlawfulness must be apparent." *Armstrong*, 810 F.3d at 907 (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). Indeed, a right may be clearly established if "a general constitutional rule already identified in the decisional law applies with obvious clarity to the specific conduct in question." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 543 (4th Cir. 2017) (alterations omitted) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)); *see also Owens ex rel. Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004) (stating that a right may be clearly established if it is "manifestly apparent from broader applications of the constitutional premise in question"). Thus, officers can be "on notice that their conduct violates established law even in novel factual circumstances." *Armstrong*, 810 F.3d at 907 (quoting *Hope*, 536 U.S. at 741).

Nonetheless, even though general statements of law may provide notice, courts must not "define clearly established law at a high level of generality," *Mullenix*, 577 U.S. at 12 (quoting *al-Kidd*, 563 U.S. at 742); *see Dolgos*, 884 F.3d at 179. Rather, courts must examine "whether the violative nature of *particular* conduct is clearly established." *Mullenix*, 577 U.S. at 12 (emphasis in original) (quoting *al-Kidd*, 563 U.S. at 742). This examination is "undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). In particular, the Fourth Amendment context requires a high level of specificity because "it is sometimes difficult for an officer to determine how the relevant legal doctrine ... will apply to the factual situation the officer confronts." *Id.* (internal quotation marks and alteration omitted).

Here, Kirkman objects that the Magistrate Judge wrongfully denied Kirkman qualified immunity for Plaintiff's federal excessive force claim:

> Defendant Kirkman objects to the Magistrate's failure to consider the uncontroverted evidence of the (1) direct threat of assault to Officer Kirkman by Ellis, (2) proximity to a dangerous highway, (3) active physical resistance to a lawful search incident to arrest, and (4) controlled and measured response by the

> officer . . . . Additionally, Defendant objects to the Magistrate's conclusion that handcuffing and partial pat down obviated Ellis's opportunity or present ability to endanger himself, the officers, or the motoring public, and that Kirkman acted outside policing standards in insisting to conduct a search incident to arrest, in the decision to take Ellis to the ground to complete the search after multiple warnings, and in holding Ellis on the ground for 7-9 minutes until a search was completed and Ellis had calmed down, as these conclusions are not supported by the law, Bluffton policies, or the uncontested record, to include the agreed upon testimony of the policing expert witnesses of both parties.

(Dkt. No. 204 at 5-6).

After careful consideration of the parties' briefing, and the Court's de novo review of the Video, discussed above, the Court finds that the Magistrate Judge correctly determined a reasonable jury could conclude Kirkman used excessive force in taking down Plaintiff by pulling out his legs from under him and then holding him on the ground for 7-9 minutes. First, the offense—driving with a suspended license—was a nonviolent one, a fact even Kirkman cannot contest. *Jones*, 325 F.3d at 528 ("[W]hen the 'offense was a minor one,' [the Fourth Circuit has] found that the first *Graham* factor weighed in plaintiff's favor."). Second, even considering additional details from the Video which Kirkman notes in his objections, the Court finds that the second and third factors—whether the suspect poses an immediate threat to the safety of the officers or others and whether the suspect is actively resisting arrest—weigh in Plaintiff's favor. When Kirkman told Plaintiff to exit his vehicle, Plaintiff exited and put his hands behind his back without incident. Plaintiff undoubtably fidgeted at times while Kirkman placed handcuffs on him and Plaintiff threatened, verbally, Kirkman at least once. The Court notes, however, that Plaintiff never accompanied any threat with violent movements directed at Kirkman. Nor did Plaintiff, despite his disrespectful language, ever attempt to escape or flee. Further, when Kirkman pulled Plaintiff's legs out from under him, Kirkman had already patted down Plaintiff's pockets and chest and Plaintiff was not in fact fidgeting but merely arguing with Kirkman about continuing to be

-9-

patted down. (Dkt. No. 194-1 at 0:10:00 *et seq.*). And, before bringing Plaintiff to the ground, Kirkman never attempted to further pat down Plaintiff but instead engaged with Plaintiff in a shouting match. (*Id.* at 0:10:19). At bottom, the Video shows that Kirkman was frustrated by Plaintiff's disrespectful language and prior fidgeting and, instead of attempting to simply complete the pat down, which Plaintiff's body language arguably indicates Plaintiff may have begrudgingly permitted, or first warn Plaintiff that he would execute a full-scale take down, Kirkman pulled Plaintiff's legs out from under him, forcing Plaintiff to fall in an uncontrolled manner to the ground. Given the totality of the circumstances, a reasonably jury could conclude that Kirkman used excessive force against Plaintiff. *See Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst*, 810 F.3d 892, 904 (4th Cir. 2016) ("Even noncompliance with police directives and nonviolent physical resistance do not necessarily create 'a continuing threat to the officers' safety."); *Id.* (citing *Goodson v. City of Corpus Christi*, 202 F.3d 730, 733, 740 (5th Cir. 2000) for the proposition that an arrestee "yank[ing] his arm away" from a police officer does not justify "being tackled"). Accordingly, the Court denies Kirkman summary judgment on Plaintiff's § 1983 excessive force claims and proceeds to analyze whether Kirkman is entitled to qualified immunity.

The Magistrate Judge recommended denying Kirkman qualified immunity for Plaintiff's § 1983 excessive force claim. (Dkt. No. 200 at 13-14) (stating that there is a "substantial body of caselaw showing that when an officer strikes [or continues to use force against] a suspect who is already restrained, this can be considered excessive force"). Here, the constitutional right in question is Plaintiff's right not to be subjected to a forced take down while restrained and offering stationary, non-violent resistance to a lawful seizure.

The Court finds that Kirkman is not entitled to qualified immunity and overrules Kirkman's objections on this point. As the Fourth Circuit noted in *Jones* in 2003, "courts have consistently

applied the *Graham* holding and have consistently held that officers using unnecessary, gratuitous and disproportionate force to seize a secured, unarmed citizen, do not act in an objectively reasonable manner and, thus, are not entitled to qualified immunity." 325 F.3d at 432; *Wiegand v. Long*, No. 2:19-cv-1842-RMG-MHC, 2022 WL 2068951, at *11 (D.S.C. Feb. 28, 2022) (noting "[t]here is a substantial body of caselaw showing that when an officer strikes [or continues to use force against] a suspect who is already restrained, this can be considered excessive force") (internal quotations omitted), *adopted*, 2022 WL 1590994 (D.S.C. May 19, 2022); *see, e.g.*, *Jones*, 325 F.3d at 532 (affirming denial of qualified immunity on excessive force claim where officer severely injured plaintiff—who was drunk and using foul language—by knocking him to the floor and jumping on him, even though the plaintiff was unarmed and handcuffed); *Kane v. Hargis*, 987 F.2d 1005, 1006–07 (4th Cir. 1993) (denying qualified immunity on excessive force claim when, taking the facts in the light most favorable to the plaintiff, she resisted arrest for driving under the influence and the police officer, after he had secured her, "repeatedly push[ed] her face into the pavement, cracking three of her teeth, cutting her nose, and bruising her face"); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (explaining that the facts of a prior case need not be identical in order for an officer to have fair notice that conduct is objectively unreasonable, so long as the reasoning of the case establishes premise that such conduct is unreasonable). While Kirkman argues that handcuffing an arrestee does not equate to "control" over a suspect, the cases Kirkman cites in support of this proposition concern inapposite factual scenarios—namely handcuffed arrestees against whom force was used because said individuals pulled *guns* on arresting officers. (Dkt. No. 204 at 36-37). Here, there is no indication Plaintiff was about to or had pulled a gun on Kirkman or had, at any time, attempted to flee from or strike Kirkman. *See Jones*, 325 F.3d at 530 (noting "slight physical movement" of a handcuffed individual could not justify an officer's use

-12-

of force against an intoxicated individual). Accordingly, for the reasons stated in the R&R, Defendants' objections are overruled and the Court denies Kirkman qualified immunity on Plaintiff's § 1983 excessive force claim.

## IV.    Conclusion

For the forgoing reasons, the Court **ADOPTS** the R&R (Dkt. No. 200) as the Order of the Court. Except for Plaintiff's claims against Kirkman for excessive force brought pursuant to § 1983 (Dkt. No. 170), Defendants' motions for summary judgment are granted (Dkt. Nos. 127, 134, 169, 170).

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Judge

July 24, 2023
Charleston, South Carolina